UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| WILLIAM GILMAN, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 11 Civ 5843 (JPO) ECF Case |
| v. | ) ) | |
| ELIOT SPITZER and THE SLATE GROUP, LLC | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) ) ) ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

Jeffrey L. Liddle
James W. Halter
LIDDLE & ROBINSON, L.L.P.
800 Third Avenue, 8th Floor
New York, NY 10022
Tel: (212) 687-8500
Fax: (212) 687-1505
*Counsel for Plaintiff*

## TABLE OF CONTENTS

                                                                          **Page No.**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF FACTS ...................................................................................................1

ARGUMENT.........................................................................................................................6

I.      Gilman is not a Public Applicant or Permittee Within the Meaning of the
        Anti-SLAPP Statute............................................................................................7

II.     Defendants Do Not, and Cannot, Allege That Their Article is Materially
        Related to Any Efforts to Challenge Gilman's Insurance License .......................8

III.    Defendants' Conclusory Allegations that the Plaintiff's Defamation Claim
        is Without Merit are Insufficient........................................................................10

CONCLUSION.....................................................................................................................11

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

600 W. 115th St. Corp. v. Von Gutfeld, 80 N.Y.2d 130 (1992)..................................................... 7

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ................................................................. 6, 10

Bell v. Little, 673 N.Y.S.2d 402 (N.Y. App. Div. 1998).................................................................. 9

Bridge Capital Corp. v. Ernst, 877 N.Y.S.2d 51 (N.Y. App. Div. 2009) ...................................... 9

Chandok v. Klessig, 632 F.3d 803 (2d Cir. 2011) ..................................................................... 7, 8

Chandok v. Klessig, 648 F. Supp. 2d 449 (N.D.N.Y. 2009) ...................................................... 7, 8

Guerrero v. Carva, 779 N.Y.S.2d 12 (N.Y. App. Div. 2004) ......................................................... 9

Harfenes v. Sea Gate Assoc., Inc., 647 N.Y.S.2d 329 (N.Y. Sup. Ct. 1995) ................................ 9

Hariri v. Amper, 854 N.Y.S.2d 126 (N.Y. App. Div. 2008)........................................................... 9

In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation,
    562 F. Supp. 2d 392 (E.D.N.Y. 2008) ..................................................................................... 3

OSJ, Inc. v. Work, 180 Misc.2d 302 (N.Y. Sup. Ct. 1999) ............................................................ 9

People v. Gilman, No. 4800–2009, 2010 WL 3036983
    (N.Y. Sup. Ct. July 2, 2010) .................................................................................................... 3

**Statutes**

N.Y. Civil Rights Law § 70-a(1)(a) ...................................................................................... 6, 7, 8, 9

N.Y. Civil Rights Law § 76-a(1)(a) ...................................................................................... 6, 7, 8, 9

N.Y. Fin. Serv. Law § 102 ............................................................................................................... 1

## STATEMENT OF FACTS[1]

Plaintiff William Gilman ("Gilman") was an employee of Marsh & McLennan Companies ("Marsh") from 1976 to 2004. (Defendants' Answer, Affirmative Defenses, and Counterclaim dated November 1, 2011, Dkt. # 1, ("Counterclaim") at Ans. ¶7.)[2] From the mid-1990s through the end of his career at Marsh, Gilman worked in the Marsh Global Broking Excess Casualty division. (Counterclaim ¶7.)

Since 1976 and through today, Gilman has been licensed by the New York State Department of Insurance.[3] (Counterclaim ¶8.) As of October 3, 2011, the New York State Department of Insurance became known as the New York State Department of Financial Services. (N.Y. Fin. Serv. Law § 102.) For the purposes of this memorandum of law, Plaintiff will refer to the entity both before and after the change as the Department of Insurance.

After months of investigation, the New York Attorney General's Office filed a civil complaint against Marsh on October 14, 2004 ("NYAG's Civil Complaint"). (Counterclaim Ex. 5.) The New York State Department of Insurance is not mentioned in the NYAG's Civil Complaint. (Counterclaim Ex. 5.) Neither are the licenses of Gilman or any other Marsh employee. (Counterclaim Ex. 5.)

---

[1] Defendants' Answer, Affirmative Defenses and Counterclaim ("Counterclaim") makes numerous allegations of fact that Plaintiff denies. However, most such allegations are not relevant to the present motion. The "Statement of Facts" here only seeks to recite those allegations relevant to the present matter. Further, Plaintiff presents the factual allegations from and cites to Defendants' Counterclaim since, for the present motion, the well-pleaded factual allegations of the Counterclaim must be accepted as true. However, Plaintiff does challenge many of these allegations and Plaintiff's recitation here should not be deemed an admission of those allegations.

[2] Defendants' Counterclaim restarts the numbering of paragraphs from the "Answer" section to the "Counterclaim" section. To differentiate, Plaintiff will refer to the paragraphs in the Answer section as "Ans. ¶__" and paragraphs in the "Counterclaim" section as "¶__."

[3] Gilman's insurance license is a matter of public record and can be found online on the New York Department of Financial Services website (https://myportal.dfs.ny.gov/nylinxext/elsearch.alice?type=Search, License# 715665). Gilman has been continually licensed since 1976 but the online public records only indicate that he has been licensed since November 1, 1998. The distinction appears irrelevant for the present purposes.

The NYAG's Civil Complaint alleged that Marsh had engaged in fraud and fraudulent business practices and committed anti-trust and securities law violations. (Counterclaim Ex. 5 at 28-30.)    Gilman is mentioned in one paragraph of the 31-page, 87-paragraph complaint. (*Compare* Counterclaim Ex. 5 ¶50 *with* ¶¶1-87.)  The allegations against Gilman were and are false.

After the NYAG's Civil Complaint was filed, the New York State Department of Insurance issued citations to Marsh, on October 21, 2004 and October 25, 2004 respectively. (Counterclaim Ex. 6 at 1.)  Defendants do not, and cannot allege, that the New York State Department of Insurance took any formal action against Gilman – no such action ever occurred.

On January 30, 2005, Marsh, the NYAG, and the New York State Department of Insurance entered into a settlement agreement resolving the NYAG's Civil Complaint and the citations by the New York State Department of Insurance against Marsh.  (Counterclaim Ex. 6 at 1-2.)  Marsh paid $850 million into a fund to be paid to Marsh's policyholders.  (Counterclaim Ex. 6 at 3.)  No portion of the payment was paid to New York State and the agreement specifically indicated that "[n]o portion of the Fund shall be considered a fine or a penalty." (Counterclaim Ex. 6 at 3.)    Marsh did not admit any wrongdoing in the agreement. (Counterclaim Ex. 6 at 2.)[4]

On September 15, 2005, the New York Attorney General announced an indictment charging Gilman and seven others with 37 counts: one count of a violation of the Donnelly Act, one count of a Scheme to Defraud, and 35 counts of Grand Larceny in various degrees. (Counterclaim Ex. 10.)

---

[4]    Marsh did issue an apology pursuant to the agreement apologizing for the actions that led to the NYAG's Civil Complaint and the citations by the New York State Department of Insurance. (Counterclaim Ex. 6 at 16.)

Gilman and a co-Defendant, Edward McNenney, were tried on 24 of these counts – 13 of the counts of the indictment were dismissed prior to trial. (Counterclaim ¶34.) The trial was a bench trial before New York State Supreme Court Justice James A. Yates from April 2007 through February 2008. (Counterclaim ¶34.)

As a result of the trial, Gilman and McNenney were acquitted of 20 counts and an additional three counts were dismissed. (Counterclaim Ex. 2 at 5.) Gilman and McNenney were initially convicted of the remaining count, a violation of the Donnelly Act, however, on July 2, 2010, Justice Yates vacated the verdict based on exculpatory evidence that the New York Attorney General failed to disclose to Gilman during the trial. *People v. Gilman*, No. 4800–2009, 2010 WL 3036983 (N.Y. Sup. Ct. July 2, 2010). Justice Yates found that "the verdict here rested firmly upon the testimony of [six witnesses], and yet, each of them, after testifying with very favorable cooperation agreements, has, at times, before during, or shortly after trial, given sworn testimony discrediting, even contradicting, their trial testimony." *Id.* at *21. "[T]aken as a whole, the evidence raises not only a possibility, but a probability that its disclosure would have produced a different result." *Id.*[5]

Prior to vacating the verdict, Justice Yates had sentenced Gilman and McNenney to sixteen weekends in jail and five years probation with 250 hours of community service. (Counterclaim ¶36.) The sentence was never served and was vacated when the conviction was vacated.

The undisclosed, exculpatory evidence that resulted in vacating Gilman's conviction came to light during a subsequent bench trial of three former co-defendants of Gilman. *People v.*

---

[5]    The Court can consider the July 2, 2010 decision of Justice Yates because it is a public record and because Defendants reference the decision in their Counterclaim. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, 562 F. Supp. 2d 392, 398 (E.D.N.Y. 2008).

*Gilman*, 2010 WL 3036983 at *3.  All three individuals were acquitted of all charges against them on October 26, 2009. *Id.* at *3 n.6.

On August 13, 2010, the WALL STREET JOURNAL published an article critical of then-Attorney General Andrew Cuomo as well as Defendant Spitzer titled "Eliot Spitzer's Last Admirer."  (Counterclaim Ex. 1.)  The article starts, "You can't blame New York Attorney General Andrew Cuomo for decisions made by his predecessor, Eliot Spitzer.  But with another famous Spitzer case ending in another embarrassment for the AG's office, and with still more evidence of prosecutorial misconduct, New Yorkers can raise a fair question: Why is Mr. Cuomo unwilling to break with the Spitzer past?"  (Counterclaim Ex. 1 at 1.)

Later in the Wall Street Journal article, the author states,

> One would think that Mr. Cuomo would want to end the era of stonewalling, especially after the defeat his office sustained last month on still another Spitzer-created prosecution.  Manhattan Supreme Court Justice James A. Yates vacated the felony convictions of two former employees of Marsh & McLennan Companies because the Attorney General's office had failed to turn over potentially exculpatory evidence to the defense.
>
> Although prosecutors had earlier assured the court that "We don't want to be accused of hiding anything," Judge Yates found that the Attorney General's office had failed to turn over more than 700,000 pages of documents, plus deposition testimony from key witnesses.
>
> Once the evidence came to light, defense lawyers argued that many of the documents directly contradicted the testimony of government witnesses at trial, and Judge Yates appears to agree. "While each item of evidence taken individually may present a reasonable possibility that the verdict would have been different, taken as a whole, the evidence raises not only a possibility, but a probability that its disclosure would have produced a different result," he said.
>
> By now, most reasonable people have concluded that the Spitzer method is to be shunned, not emulated.  A genuine government reformer might also wish to shine the light on the way the AG's office operated during the Spitzer era.  But Mr. Cuomo can't seem

4

to let go of the Spitzer cases, nor turn the page on his predecessor's penchant for secrecy.

(Counterclaim Ex. 1 at 1-2.)  The WALL STREET JOURNAL article does not mention the New York State Department of Insurance or Gilman's Department of Insurance license.

Defendant Spitzer responded to the criticism through his column on *Slate*.com, run by Defendant The Slate Group, LLC.  He states:

> The *Journal*'s editorial also seeks to disparage the cases my office brought against Marsh & McLennan for a range of financial and business crimes.  The editorial notes that two of the cases against employees of the company were dismissed after the defendants had been convicted.  The judge found that certain evidence that should have been turned over to the defense was not.  (The cases were tried after my tenure as attorney general.)  Unfortunately for the credibility of the *Journal*, the editorial fails to note the many employees of Marsh who have been convicted and sentenced to jail terms, or that Marsh's behavior was a blatant abuse of law and market power: price-fixing, bid-rigging, and kickbacks all designed to harm their customers and the market while Marsh and its employees pocketed the increased fees and kickbacks.  Marsh as a company paid an $850 million fine to resolve the claims and brought in new leadership.  At the time of the criminal conduct, Jeff Greenberg, Hank Greenberg's son, was the CEO of Marsh. He was forced to resign.

(Complaint Ex. A at 2.)  Defendants' article does not mention the New York State Department of Insurance or Gilman's Department of Insurance license.

The article was false in several respects.  First, no Marsh employee, particularly not Gilman, whose conviction was vacated, served jail time as a result of Mr. Spitzer's allegations. (Counterclaim Ans. ¶¶ 19 and 28.)  Second, Marsh's and Gilman's behavior was not illegal and did not amount to price-fixing, bid-rigging or kickbacks.  (Counterclaim Ans. ¶29.)  Third, no customers were harmed by Marsh's or Gilman's actions.  (Counterclaim Ans. ¶31.)  Fourth, Gilman did not receive any benefit from the actions complained of − that was not even an

allegation during any of the various litigations.  (Counterclaim Ans. ¶32.)  And, fifth, the $850 million paid by Marsh was not a fine.  (Counterclaim Ex. 6 at 3.)

The article defamed Gilman.  In the article, Spitzer attempted to minimize the fact that Gilman's conviction was vacated by arguing that it is a mere technicality and alleging that he is guilty based on his false allegations.  (Complaint Ex. A at 2.)  As such, on August 19, 2011, Gilman asserted a claim of defamation against Spitzer and The Slate Group, LLC.  (Dkt. # 1.)

On November 1, 2011, Defendants filed a counterclaim against Gilman under New York's statute against "Strategic Lawsuits Against Public Participation" ("anti-SLAPP").  (Dkt. #13.)  The anti-SLAPP statute does not apply here and Defendants' counterclaim should be dismissed.

## ARGUMENT

Plaintiff makes the present motion to dismiss Defendants' counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As such, the Court must accept all well-pleaded facts as true, however, the Court "is not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss.  *Id.*  Defendants have not, and cannot, meet that standard.

New York's statute against Strategic Lawsuits Against Public Participation provides that

> [a] defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain a[] . . . counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action, [if that action was] commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law.

6

N.Y. Civil Rights Law § 70-a(1)(a).

Section 76-a defines "[a]n 'action involving public petition and participation,'" in pertinent part, as "an action . . . for damages that is brought by a public applicant or permittee." *Id.* § 76-a(1)(a). The statute further defines "public applicant or permittee" as

> any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission.

*Id.* § 76-a(1)(b).

Thus, the elements of an anti-SLAPP claim are: "1) there must be a public application or petition, 2) the public applicant or permittee of that application must file a lawsuit against a person who is 'materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission,' and 3) that the lawsuit must be, at a minimum, substantially without merit." *Chandok v. Klessig*, 648 F. Supp. 2d 449, 460 (N.D.N.Y. 2009) (quoting N.Y. Civil Rights Law §§ 70[-a] and 76[-a]). Defendants have not, and cannot plead any of these elements.

## I.      Gilman is not a Public Applicant or Permittee Within the Meaning of the Anti-SLAPP Statute.

The anti-SLAPP statute was passed to address "a rising concern about the use of civil litigation, primarily defamation suits, to intimidate or silence those who speak out at public meetings against proposed land use development and other activities requiring approval of public boards." *Chandok v. Klessig*, 632 F.3d 803, 818 (2d Cir. 2011) (quoting *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 137 n.1 (1992)). To ensure the anti-SLAPP statute did not create counterclaims outside this intended purpose, the statute only permits counterclaims against "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or

other entitlement for use or permission to act from any government body." N.Y. Civil Rights Law § 76-a(1)(b).

In an attempt to manufacture a basis to apply the statute, Defendants can only point to the fact that Gilman has an insurance license issued by the New York State Department of Insurance. However, Defendants' argument that such a license renders the anti-SLAPP statute applicable here strains the statute too far.

An insurance license is not the type of "proposed land use development and other activities requiring approval of public boards" that the statute was intended to target. *Chandok*, 632 F.3d at 818. While the word "license" is accurate to describe Gilman's insurance license, that, alone, cannot be sufficient. Otherwise, anyone with a driver's license issued by the Department of Motor Vehicles would be subject to anti-SLAPP counterclaims.

Gilman is not a public applicant or permittee with the meaning of the statute. This fact alone warrants dismissal of Defendants' counterclaim here.

## II.     Defendants Do Not, and Cannot, Allege That Their Article is Materially Related to Any Efforts to Challenge Gilman's Insurance License.

Nor are Gilman's defamation claims, "materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." *Chandok*, 648 F. Supp. 2d at 460. Gilman has been continually licensed by the New York Department of Insurance since 1976. There has never been any proceeding by the New York Department of Insurance to take away Gilman's license.

"In the absence of evidence that [the defamation] defendants were petitioning an agency regarding an application or permission of [the defamation] plaintiffs, [the court] must conclude that plaintiffs' action 'did not affect defendant[s'] rights of public petition and participation before public agencies and, accordingly, did not offend Civil Rights Law §§ 70-a and 76-a."

8

*Guerrero v. Carva*, 779 N.Y.S.2d 12, 22 (N.Y. App. Div. 2004) (quoting *Bell v. Little*, 673 N.Y.S.2d 402, 403 (N.Y. App. Div. 1998)). "[T]he anti-SLAPP law is in derogation of the common law and must be strictly construed." *Hariri v. Amper*, 854 N.Y.S.2d 126, 130 (N.Y. App. Div. 2008).

Thus, Defendants "must directly challenge a license or permit application in order to establish a cause of action under Civil Rights Law §70-a." *Harfenes v. Sea Gate Assoc., Inc.*, 647 N.Y.S.2d 329, 333 (N.Y. Sup. Ct. 1995). "Requiring a close nexus between [D]efendants' advocacy efforts and [P]laintiffs' application or permit furthers the statute's underlying purpose of protecting all citizens' right of public petition, while simultaneously preventing such right from being abused in a context far removed from any traditional mode of public petition." *Guerrero*, 779 N.Y.S.2d at 22. Further, Defendants' "communications must have been 'substantially related to such application or permit.'" *Bridge Capital Corp. v. Ernst*, 877 N.Y.S.2d 51, 52 (N.Y. App. Div. 2009) (quoting *Guerrero*, 779 N.Y.S.2d at 22) (finding prior lawsuit alleging defendants made false statements in an offering plan filed with the Attorney General's Office, where the cause of action was fraudulent inducement based on those false statements, did not involve "the type of public advocacy or participation protected under the anti-SLAPP statute, and thus the instant action did not offend §§ 70–a and 76–a").

Defendants never challenged Gilman's insurance license and they do not allege otherwise. Nor does Defendants' defamatory article mention Gilman's insurance license or even the New York State Department of Insurance. In fact, Defendants do not allege there was ever a challenge to Gilman's insurance license by anyone. *Cf. OSJ, Inc. v. Work*, 180 Misc.2d 302, 307 (N.Y. Sup. Ct. 1999) (finding New York's anti-SLAPP statute did not apply where "[t]he record [wa]s devoid of any evidence that either the prosecution and administrative proceeding [for

9

serving alcohol to underage patrons] against the [anti-SLAPP] plaintiff or defendant['s] decision to testify against plaintiffs [operators of a tavern] arose in any way from defendant['s] own desire or efforts to challenge the status of plaintiffs' liquor license.").

As Defendants fail to allege that there was any challenge to Gilman's insurance license at the time of his comments, much less Defendants' participation in that challenge, or that Defendants' article was in any way related to such a challenge, Defendants' counterclaim must be dismissed.

**III.    Defendants' Conclusory Allegations that the Plaintiff's Defamation Claim is Without Merit are Insufficient.**

Defendants' Counterclaim also fails to provide factual allegations that give rise to an inference that Plaintiff's defamation claim is without merit.

Defendants refer to Plaintiff's defamation claim as "baseless, vexatious and retaliatory" (Counterclaim ¶41) and "asserting a baseless, legally and factually insupportable claim" (Counterclaim ¶49.)  The Defendants then go on to criticize the Second Amended Complaint filed in a separate proceeding that does not involve Defendants.  (Counterclaim ¶¶42-44.)[6]

The legal conclusions by Defendants are insufficient to establish that Plaintiff's defamation claim is without merit. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (The Court "is not bound to accept as true a legal conclusion couched as a factual allegation.").

Indeed, Defendants cannot make such allegations and the article is defamatory. Defendants' article clearly singles out Gilman and one other former Marsh employee – the two former employees who had their convictions overturned.  (Complaint Ex. A at 2.)  The article then goes on to state that despite the convictions being overturned, the Plaintiff was, in fact,

---

[6]    *Gilman et al. v. Marsh & McLennan Companies, Inc. et al.*, Case No. 10 Civ. 8158 (JPO) (S.D.N.Y.), (the "Marsh Matter") has been deemed a related action to the present matter. (Unnumbered docket entry, Oct. 5, 2011.) The two matters are related only to the extent they involve overlapping evidence. The causes of action are wholly independent. Regardless, Defendants' Counterclaim is not directed to any action in the Marsh Matter.

guilty of bid-rigging, price-fixing, accepting kickbacks.  (Complaint Ex. A at 2.)  Defendants attempt to bolster their claims that Gilman is guilty by falsely stating that former Marsh employees served jail sentences and falsely stating that Marsh paid an $850 million fine. (Complaint Ex. A at 2; Counterclaim Ex. 5 at 3.)  Defendants' article further states that Gilman and others "pocketed kickbacks" (Complaint Ex. A at 2), which was never even an allegation leveled against any Marsh employee even before the numerous acquittals and dismissals.  These are false statements regarding Gilman's business activities and accusing him of criminal conduct.

As such, Defendants do not, and cannot, allege facts from which a factfinder could conclude that Plaintiff's claim for defamation per se by libel is without merit.  Defendants' Counterclaim fails to state a claim upon which relief can be granted as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that Defendants' Counterclaim be dismissed with prejudice.

Dated: November 22, 2011
          New York, New York

                                Respectfully submitted,

                                LIDDLE & ROBINSON, L.L.P.


                                James W. Halter
                                Jeffrey L. Liddle
                                800 Third Avenue, 8th Floor
                                New York, NY 10022
                                Tel: (212) 687-8500
                                Fax: (212) 687-1505
                                *Counsel for Plaintiff*

11